GEORGE D. COOPER, Respondent, v. SAMUEL L. CARTER, Trustee for FRANK CARTER et al., Appellants.

**Kansas City Court of Appeals, May 16, 1910.**

1. **WILLS: Trusts and Trustees: Obligations of Trustee of Incompetent Person.** Where the father of an incompetent son provided in his will that after the testator's death such son should reside with his mother, and the testator set apart to a trustee a $600.00 annuity for said son, that annuity was intended for the support and maintenance of said son, and not to build up a fund to be distributed among the heirs of such incompetent son on his death.

2. ———: ———: ———. Where in such a case the son's mother died, and another person takes care of and provides for the son, such person is entitled to recover from the trustee the

reasonable value of such services so rendered, when the trustee does not perform such services, or arrange for their performance, and knows of their performance by such other person.

3. ———: ———: ———: ———. While such trust estate cannot ordinarily be reached in an action at law to pay claims against the beneficiary even for claimed necessities furnished to him, yet the courts will require that the spirit of the trust be carried out and that the trust be performed for the benefit of the *cestui que trust*.

4. ———: ———: ———: **Removal of Trustee.** The trustee of such a trust should be required to carry out the purposes of the trust, or he should be removed and a proper person substituted in his place.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes*, Judge.

AFFIRMED.

*W. S. Herndon* for appellant.

(1) Under the allegations of the respondent's petition the only action he could have against the defendant Frank Carter would be one at law on an implied contract for necessaries furnished an insane person. 16 Am. and Eng. Ency. Law (2 Ed.), 601; Reando v. Misplay, 90 Mo. 251. (2) Frank Carter has no interest in the funds in the hands of said trustee, created by the will of said Luther Carter, deceased, which his creditor can take for the payment of any liability, express or implied, of said Frank Carter. Carter v. Boster, 122 Mo. App. 135; 26 Am. and Eng. Ency. Law (2 Ed.), 139 to 143; Kessner v. Phillips, 189 Mo. 515. (3) The provisions of this will create what is commonly called a "spendthrift" trust. It is not necessary for the testator to state specifically that the bequest is not subject to the claims of creditors, or that it could not be disposed of by the *cestui que trust*. If it appears from the terms of the will that the thing bequeathed is so limited, it has that effect, without being so stated.

26 Am. and Eng. Ency. Law (2 Ed.), 141-2; Pickens v. Dorris, 20 Mo. App. 5.

*R. H. Musser* and *F. B. Ellis* for respondent.

Any property that an insane person may have, like an infant, is liable for necessaries furnished him, and the person who does furnish them can recover on an implied contract, their reasonable value. Reando v. Misplay, 90 Mo. 257; 1 Beach Modern Law Contract, sec. 643.

BROADDUS, P. J.—This is a suit against the trustee of the estate of the *cestui que trust* for necessaries furnished the latter.

In February, 1900, Luther Carter died testate, leaving Margaret his wife, three sons and one daughter surviving him, two of which are Samuel L. and Frank Carter who are the defendants to this suit.

In his will, Luther Carter made the following provision for Frank, to-wit:

"Fourth. My beloved son, Frank Carter, being incompetent, I desire that he shall live with my wife, Margaret Carter, so long as he may desire on the land devised to her as aforesaid, and for the care, support and maintenance of my said son, Frank Carter, I hereby set apart from my estate, if there be a sufficient amount of personal estate, the sum of six hundred dollars as an annuity to be paid to Samuel L. Carter as trustee for the said Frank Carter, and in case the personal estate be not sufficient for such annuity and the annuity provided for Margaret S. Carter as aforesaid, I direct that the same be and I hereby make the same a charge upon the lands hereinafter devised to my said children, Samuel L. Carter, John W. Carter and Mary E. Walters, one-third part each.

"Eighth. Having full faith and confidence in my son, Samuel L. Carter, I do hereby nominate and appoint him to be the executor of this my last will and testament, and also as trustee, to take charge and care

for the annuity above provided for my son, Frank Carter, and he is hereby authorized to pay the same out for the benefit of the said Frank Carter without any further authority, and I request that he be not required to enter into any bond as my executor."

The first wife of the testator having died, he married Margaret Morgan, a sister of his first wife, who survived him as stated. Frank continued after his father's death to reside with his step-mother, Margaret. A short time after the death of the testator the plaintiff who had married a daughter of the said Margaret but whose wife had also died, at the request of Margaret moved into the house with her, bringing with him his children, all young.

Plaintiff resided with his mother-in-law, Margaret, from the 28th day of March, 1900, until the latter part of November, 1906, during which time he furnished the necessaries for the entire household, including Frank, and nursed him, Frank, and provided for his washing. The evidence tended to show that the defendant knew that plaintiff was boarding Frank, taking care of him and having his washing done. It was shown that defendant collected the annuity annually and that he had accumulated a fund of about three thousand dollars, in his hands provided for the support of his ward.

The court submitted to a jury the question of the reasonable value of the services rendered to Frank Carter, which returned a verdict in favor of plaintiff in the sum of three hundred dollars.

Thereupon the court made a finding of facts in accord with the finding of the jury, and rendered judgment for the amount of three hundred dollars, against defendant and made the same a charge against the funds in his hands as trustee and directed him to pay the amount to the plaintiff. Defendant appealed.

Defendant contends that Frank Carter had no such interest in the estate created by the will which he could affect by any contract express or implied. This must

Cooper v. Carter.

be conceded, as the power of administering the fund was vested wholly in the defendant as trustee. The purpose of the testator was to secure the fund for the benefit of his son who was incapable of managing it because of his mental incapacity. But it is clear that he intended that his incompetent son should receive the full benefit of the estate he had created for his subsistence and comfort and not that it should be hoarded by the trustee. The defendant, as trustee, has only one power over the disposal of the annuity and that is to pay it out for the benefit of the *cestui que trust* and not to hoard it which seems to be his purpose. He made no provision for the care, custody and support of Frank Carter, his ward, for the time he was cared for and supplied with necessities by plaintiff. He knew where his ward was and that he was cared for and supplied with necessities by plaintiff and it does not lie in his mouth to deny that the fund in his hands is not liable therefor. An implied obligation rests upon him to appropriate the necessary amount of the annuity in his hands to discharge plaintiff's claim. He will not be permitted to stand by and neglect to support and care for his ward, all the while suffering others to do so, and shield himself on the ground that plaintiff was acting without his direct authority. The will provided that his ward should continue to reside with the widow but it did not provide that it should be at her expense, but on the contrary it contemplated that she should be compensated out of the annuity provided for the care and support of Frank, and not at the expense of her annuity provided for her own support. Under these circumstances the plaintiff standing in the shoes of the widow had the right to rely upon the fund provided for the support of Frank and the obligation rested upon defendant as trustee to recompense plaintiff, that is to pay for such support.

We do not want to be understood as holding that the annuity in the hands of the defendant could be

subjected to the claim of any person who might choose to furnish to the beneficiary what might be called necessities without some implied authority from the trustee, or except for a most pressing emergency to save him from entire destitution; for such a course might tend to defeat the purpose of the testator in the improvident wasting of the estate. The trust should receive a reasonable construction, so that the purpose of the testator would be carried out in that the object of his benefaction would receive its benefits to the fullest. The defendant's contention, if supported, would defeat the object of the trust and result in the accumulation of a fund which would only benefit the heirs of the *cestui que trust* at his death.

The settlement of the trustee shows that he paid for his ward in 1900, $38.65, for clothing, pastor's salary, recording, and drugs; in 1901, $36.65; in 1902, $19.29; in 1903, for clothing $30.85, pastor's salary $5 and $486.35, medical expenses; in 1904, $210.76, medical expenses, $7.50, pastor's salary, $14.28 taxes, and $2 for ward; and one dollar drug bill; in 1906, $23 for the church, $15 for barbering, $61.60 clothing, $2 cash, $310 attorneys' fees, $24 court costs, $123.50 medical bill, $1.50 chautauqua ticket; in 1907, $8 for church, $85 for clothing, $6 for barbering, $28.75 for taxes, $143 for doctoring, $75 attorneys' fees, $150 compensation to himself as trustee, $9.65 court costs, $4 cash to ward, $6.75 board, and $7.25 expenses to Kansas City.

The account shows that during all these years defendant paid out only a small sum for the board of his ward and expended little for his clothing the two most essential things for his comfort, which excepting taxes and medical supplies the most necessary. Considerable sums were expended for attorneys' fees, compensation to trustee, court costs, pastor's salary and church donations; but in no single year did the expenditures equal the annuity in the hands of the trustee.

Cooper v. Carter.

These settlements exhibit a most shameless disregard on the part of the trustee of the duties of his trust, and a purpose to accumulate an estate for the benefit of himself and co-legatees, as heirs-at-law, at the expense of his ward. He should be required to carry out, in good faith, the trust reposed in him or be removed and some disinterested and humane person substituted in his place, who would administer the estate so that the *cestui que trust* should recover the full benefit of it, as his father in the natural tenderness of his heart for his unfortunate son intended he should. We are fully persuaded that the judgment was for the right party and it is therefore affirmed. All concur.